## Case No. 14,334.

### The UNCLE ABE.

[9. Ben. 502.] [1]

District Court, E. D. New York. May. 1878.

COLLISION AT PIER—DAMAGES—REPAIR BY WRONG-DOER—RIGHT OF ACTION BY MASTER FOR INSUFFICIENT REPAIR.

1. The master of a vessel having charge and custody of her at the time of a collision may maintain an action to recover the damages caused by the collision, it appearing that the bringing of .the action has been authorized and approved by all interested. The master's right of action in such case is not affected by the fact that underwriters upon the vessel have paid the cost of the repairs, which constitute a part of the demand sued for.

2. Where a party, while denying liability for a collision. offers to repair the damages, and that offer is accepted, and afterwards suit is brought on the ground of insufficient repair, the court will not be astute to discover unimportant particulars, in which the condition of the vessel differs when repaired from her condition before the collision.

3. When the wrong-doer takes the injured vessel into his possession to repair the injury he has done, he will be required to show that the boat, when returned, was in substantially as good condition as before the accident. Where in such a case the boat. when returned. appears to have been repaired in an imperfect manner, and the owner had refused to accept the repairs as satisfactory. the wrong-doer will be *held* liable for all the *additional* work *necessarily* done upon the boat, to put her in as good condition as she was before the accident.

In admiralty.

Beebe, Wilcox & Hobbs. for libellant.
C. E. Crowell, for claimant.

BENEDICT, District Judge. This action is brought to recover for the damage caused to the barge Wilson by a collision that occurred in the East river on the seventh day of December. 1877. At the time of the accident the barge was being towed across the river from Brooklyn to pier 4. New York. by the tug Titan. upon a hawser. She had reached within about 150 feet of pier 4. was heading sharply on to the pier. and awaiting the departure of some tugs from the end of .the pier. when the tug Uncle Abe, coming around the Battery up the East river, ran into her. striking her upon the port side. and doing the damage complained of.

The questions to be determined are, first. whether the suit is properly brought in the name of the libellant; second. whether the Uncle Abe was guilty of any fault rendering her liable for the damage: and third. whether the damage caused by the collision has not been fully repaired by the owners of the Uncle Abe.

The facts bearing upon the first question are these: The libellant was, and is. the master of the barge Wilson; he is also owner of one-sixth of her. and he is also the holder of a chattel mortgage upon the remaining five-sixths. executed by one Warford. which

[1] [Reported by Robert D. Benedict. Esq.. and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

mortgage is past due, but has never been foreclosed. Warford himself is called as a witness for the libellant and testifies that the suit was, with his knowledge and assent, brought in the name of the libellant. The cost of repairs incurred by the libellant has been paid by underwriters who had insured the vessel, and who authorized this suit to be brought by the libellant for their benefit so far as it relates to those repairs.

These facts are sufficient to enable the libellant to maintain the action. Being the master of the vessel, and his action in bringing the suit being authorized and approved by all interested, he may, by virtue of his position as master, having charge and custody of the vessel at the time of the accident, maintain an action to recover damages sustained by his vessel. Nor is his right of action affected by the circumstance that the underwriters upon the vessel have paid the cost of the repairs which constitute a part of the demand. It is as competent for the underwriters to institute such an action in the name of the master as it is for the owners. The master of a vessel acts in the matters of the vessel for whom it may concern; and certainly when his action is known and approved, not only by the owners but the underwriters, it is a bar to any future action on their part for the recovery of the same amount.

As to the merits of the collision there can be no doubt. The account given by those on board the Uncle Abe convicts her of fault. According to this account the Titan, with the barge Wilson in tow, was crossing from Brooklyn to New York, and was about 150 feet from the end of pier 4, moving slowly towards the pier, whither, as it elsewhere appears, she was bound, her engine having been stopped but her headway not killed. The Uncle Abe coming up the river along the piers saw the Titan and blew two whistles, apparently expecting the Titan to stop and allow her to pass ahead. No reply was received to this signal. Nevertheless the Uncle Abe kept her course as well as speed, and as she approached nearer to the Titan again blew two signals, which signals also received no reply. When close to the Titan the Uncle Abe ported, and stopped and backed her engine, but too late to prevent her coming in contact with the port side of the barge, doing the damage complained of. According to this account,—which differs somewhat from that given by those on the Titan, but which, as against the Uncle Abe, may be taken to be true,—the Uncle Abe was in fault for keeping her speed and course when she saw that the Titan did not answer her signals, and continued to move towards the pier. It was her duty, under the circumstances to port in time, and thus pass under the Titan's stern, or, if that was impossible, then to stop.

The principal question of the case remains to be disposed of, and that arises out of the following facts. After the collision, it was arranged between the claimant and the owners of the injured boat that the boat should be taken to the claimant's yard, and there the injuries caused by the collision be repaired by the claimant. In accordance with this arrangement the claimant took the boat and put upon her certain repairs which it is insisted fully repaired all the injuries caused by the collision. Objection was made to the extent and nature of the work so done upon the boat, and after she was surrendered by the claimant further and additional repairs were done upon her, including the removal at considerable expense of a large part of the work done by the claimant. It is in regard to the liability for this additional work done that the main dispute has arisen.

The desire of the court is to encourage parties to take such a course in regard to damages caused by collision as will reduce the actual loss to the minimum; and where, as in this case, a party while denying liability offers to repair the damage, and that offer has been accepted, there is no reason why the court should be astute to discover unimportant particulars, in which the condition of the vessel when repaired differs from her condition as it was before the accident. Nevertheless justice requires that when under such circumstances a wrong-doer takes the injured boat into his possession for the purpose of repairing the injury he has done, he should be required to show that the boat when returned was in substantially as good condition as before the injury. In the present instance it is impossible for me to find that the repairs done by the claimant put the libellant's boat in as good condition as she was before the collision. Among other things it seems plain that the method adopted to repair the injury to the clamp, which was broken by the collision, was not proper. It also appears that some injury was done to the bottom that was not repaired by the claimant; and there may be other particulars disclosed by the evidence in which the work done was defective,—if so, they can be ascertained on the reference that must be ordered. Those I have mentioned are the main items over which controversy has been had.

It having thus been found that the repairs done by the claimant were not such as constitute a proper repair of the boat, I am unable to avoid the conclusion that the claimant must be held liable for all the additional work necessarily done upon the boat to put her in as good condition as she was before. The result will doubtless be a very considerable increase in the amount of loss entailed upon the claimant by the collision. This result is one much to be regretted. But the claimant consented to undertake to repair the damage without having a previous definite understanding as to what was required to be done to make the damage good, and of course he took the risk of determining for himself what was necessary to accomplish

that end. He is entitled to have his determination fairly considered, but upon the proofs in this case it is impossible to uphold it. Neither can it be claimed that any action on the part of the owners of the boat induced the claimant to repair the vessel in the manner adopted by him. On the contrary the proof is clear that the carpenter to whom the claimant entrusted the work of making the repair was expressly notified that the method being pursued in repairing the damage was not the proper method, and that the work would have to be taken out. It was open to the claimant upon such objection made either to abandon work and surrender the boat, leaving the libellant to his legal remedy, or to conform to the notification that had been given. He did neither, but went on with the work according to his own judgment in respect to his legal liability, and of course at his own risk.

Nor can it be contended that the work done by the claimant was ever accepted on the part of the owners of the boat. On the contrary, the boat was received from the claimant by the owners under circumstances which forbid the conclusion that there was ever an acceptance of the boat as having been properly repaired.

In regard to the claim for injury to the libellant's watch caused by the collision, the evidence is not sufficiently definite to warrant a recovery for such injury. The claim for personal injury to a deck-hand caused by his being thrown down by the collision, must also be rejected, as the proof is not sufficient to warrant the conclusion that the collision was the immediate cause of the temporary disablement of the man for which a recovery is sought.

The determination therefore is, that the libellant is entitled to a decree for the damages caused by the collision in the pleadings mentioned, and a reference is directed to ascertain and report the amount of work and materials necessarily done and expended upon the boat, after she was surrendered by the claimant, in repairing the injury to the boat caused by the collision.